UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TONY PRESTEL, ) | |
| ) | 3:12-cv-00137-LRH-VPC |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| MICHAEL J. ASTRUE, ) | |
| ) | |
| Defendant. ) | July 3, 2013 |
| ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand (#13).[1] Defendant filed an opposition and a cross-motion for summary judgment (#14/#15).[2] Plaintiff replied (#18). For the reasons set forth below, the court recommends that plaintiff's motion for remand (#13) be denied, and defendant's cross-motion for summary judgment (#15) be granted.

## I. ADMINISTRATIVE PROCEEDINGS

On February 1, 2009, plaintiff Tony Prestel ("plaintiff") filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (Administrative Record ("AR") 12, 64-65). Plaintiff alleged disability beginning December 9, 2006, due to nerve damage and/or numbness/weakness/sciatica in his left leg, pain in his left shoulder, and a back condition. *Id*. at 44, 199. The Commissioner denied plaintiff's claims initially and on

---

[1] Refers to the court's docket numbers.
[2] Docket numbers 14 and 15 are identical.

reconsideration. *Id.* at 39-41, 44-52, 199-206. On March 10, 2011, plaintiff appeared at a hearing before Administrative Law Judge ("ALJ") L. Kalei Fong. *Id.* at 208-222. On July 6, 2011, the ALJ issued a written opinion, upholding the denial of plaintiff's claims. *Id.* at 12-20. On January 13, 2012, the Appeals Council denied review, rendering the ALJ's decision final. *Id.* at 3-5. On March 13, 2012, having exhausted all administrative remedies, plaintiff filed a complaint for judicial review in this court (#1).

## II.  BACKGROUND

Plaintiff was forty-seven years old at the time of his hearing before ALJ Fong, and has a high school equivalency certification ("GED") (AR 212). The ALJ considered plaintiff's age, education, work experience and residual functional capacity ("RFC") and found that plaintiff is capable of performing jobs that exist in significant numbers in the national economy. *Id.* at 19. Accordingly, the ALJ determined that plaintiff "has not been under a disability," as defined in the Social Security Act. *Id.* at 20. Specifically, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2011.

2. The claimant has not engaged in substantial gainful activity since December 6, 2006, the application date (20 C.F.R. §§ 404.1571, *et. seq.* and 416.971, *et. seq.*).

3. The claimant has the following severe impairment: degenerative disc disease (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§§§§§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. The claimant has the residual functional capacity to lift 20 pounds occasionally, and 10 pounds frequently. The claimant can sit 6 hours, and stand and/or walk 4 hours, in an 8-hour day. The claimant should avoid climbing stairs, ladders and scaffolds (20 C.F.R. §§ 404.1567(b) and 416.967(b)).

6. The claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and

416.965).

7. The claimant was born on May 13, 1963, and was 43 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§§§ 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 9, 2006, through the date of this decision (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

*Id.* at 14-20.

### III.  STANDARD OF REVIEW & RELEVANT LAW

The court must uphold the ALJ's decision if the ALJ applied the correct legal standards and his or her findings of fact are supported by substantial evidence in the record. *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Matthews v. Shalala*, 10 F.3d 678, 679 (9th Cir. 1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *See Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citing *Smolen*, 80 F.3d at 1279). "To determine whether substantial evidence exists [the court must] look at the record as a whole, considering both evidence that supports and undermines the ALJ's findings. However, if the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995) (citations omitted). The ALJ alone is

responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The Social Security Administration defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Pursuant to the Social Security Act, the Secretary has adopted regulations which establish a formalized, five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ considers: (1) whether the claimant is engaging in substantial gainful activity; (2) the severity of the alleged impairment(s); (3) whether the impairment(s) meet or equal a listed impairment and meet the duration requirement; (4) whether the claimant is capable of doing work he or she has done in the past; and (5) whether the impairment(s) prevent the claimant from doing any other work. *Id.* If at any point in the five-step inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

## IV.  ANALYSIS

Plaintiff contends that the ALJ made multiple legal errors and came to conclusions which are not supported by substantial evidence in the record (#13, p. 4). Plaintiff claims that: (1) the ALJ made insufficient findings at Steps 2 and 3 of the sequential evaluation process (#13, p. 7); and (2) the ALJ improperly rejected Dr. Dapra's medical opinion. *Id.* at 7-11.

Defendant argues that: (1) the ALJ considered all of plaintiff's impairments and properly found that plaintiff has the severe impairment of degenerative disc disease (#14, p. 3); (2) the ALJ properly found that plaintiff's combined impairments were not so severe as to be presumptively disabling under agency guidelines (#14, p. 4); and (3) in assessing plaintiff's RFC, the ALJ reasonably resolved conflicts in the medical opinions based on the overall medical record and the lack of ongoing significant treatment. *Id.* at 6-7.

**A.   The ALJ's Findings at Step 2**

In social security cases, a claimant is "disabled" if the claimant has a severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step 2, the claimant must prove that a physical or mental impairment is severe by providing medical evidence consisting of signs, symptoms and laboratory findings. *See* 20 C.F.R. §§ 404.1508, 416.908. The claimant is required to present "complete and detailed objective medical reports of [his or her] condition from licensed medical professionals." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (citation omitted). The claimant's own statement of symptoms alone will not suffice. *See* 20 C.F.R. §§ 404.1508, 416.908. An impairment, or combination of impairments, is "not severe" when medical and other evidence establish only a slight abnormality that would have no more than a minimal effect on the individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921.

Plaintiff alleges that the ALJ committed reversible error in Step 2 of the sequential evaluation process because even though the ALJ found that plaintiff has the severe impairment of degenerative disc disease, the ALJ did not specify where plaintiff's degenerative disc disease is located (#13, pp. 6-7; #18, p. 2). Thus, plaintiff contends that the court must remand this case for specific findings, as

plaintiff's RFC will contain different limitations from a severe impairment in his cervical spine as opposed to his lumbar spine (#18, p. 2).

The court finds that plaintiff's argument has no merit. Plaintiff has not cited any case in which an ALJ's finding of severe degenerative disc disease was insufficient because the ALJ did not specify where the degenerative disc disease occurred. Further, the court finds that even if the ALJ had specified where plaintiff's degenerative disc disease was located (the cervical spine, for example), this would have no bearing on the ALJ's determination that plaintiff was not disabled under the Social Security Act. As analyzed below, the ALJ's RFC analysis was properly supported by plaintiff's existing medical records, and plaintiff's RFC would not have changed given a more specific finding at Step 2.

Accordingly, the ALJ did not commit reversible error by failing to specify where plaintiff's degenerative disc disease was located at Step 2 of the sequential evaluation process.

**B. The ALJ's Finding at Step 3**

In Step 3, the ALJ compares the claimant's impairments with those found in "The Listing of Impairments" ("the Listings"). *See* 20 C.F.R. § 404, Subpart P, Appendix 1. The Listings describe specific impairments of each of the major body systems which are considered "severe enough to prevent a person from doing any gainful activity, regardless of his or her age, education, or work experience." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). If the claimant's impairments meet or equal a listed impairment, and are of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). Medical equivalence is established "if the medical findings are at least equal in severity and duration to the listed findings." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). It is the claimant's burden to show that he or she has an impairment

that meets or equals the criteria of a listed impairment.  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

"[The ALJ] will evaluate each case *based on the information in the case record*."  *Burch*, 400 F.3d at 682 (emphasis in original).  Further, the ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.  *Id.* at 683.

Plaintiff alleges that the ALJ committed reversible error in Step 3 of the sequential evaluation process by failing to specify whether he considered plaintiff's cervical spine, lumbar spine, or both, in determining whether plaintiff's impairments met or equaled any of the listed impairments.  The court notes that the ALJ considered Listing 1.04, but found that plaintiff's medical records did not contain the diagnostic testing and serious clinical findings required under that listing (AR 14).

Plaintiff does not attempt to explain how the ALJ's specification of the cervical spine, lumbar spine, or both, would have affected his determination at Step 3.  Moreover, the court notes that Listing 1.04 does not differentiate between degenerative disc disease of the cervical spine and degenerative disc disease of the lumbar spine.  *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 1.04.  Thus, it is unclear to the court what advantage plaintiff would have gained had the ALJ specified where plaintiff's degenerative disc disease was located.

In addition, there is no evidence that plaintiff's degenerative disc disease, alone or in combination, meets or equals a listing.  At Step 3 of the sequential evaluation process, it is the claimant's burden to show that he has an impairment which meets or equals the criteria of a listed impairment.  *Burch*, 400 F.3d at 683.  Here, plaintiff does not specify how his degenerative disc disease could meet or equal a listed impairment under agency guidelines, or what evidence in the record could support such a theory.  Plaintiff has offered limited medical evidence, and no doctor has

presented an opinion tending to show that plaintiff's degenerative disc disease combined with any other impairment to equal a listed impairment.  *See* AR 129-137, 171-177, 187-194; *Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.") (citing *Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001) ("in distinguishing *Marcia v. Sullivan,* 900 F.2d 172 (9th Cir. 1990), this Court determined that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listing impairment")).

Accordingly, the ALJ did not commit reversible error by failing to specify where plaintiff's degenerative disc disease was located at Step 3 of the sequential evaluation process.

**C.  Dr. Dapra's Opinion**

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  Cases within the Ninth Circuit distinguish between the opinions of: (1) treating physicians, (2) examining physicians, and (3) non-examining physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating physicians are afforded greater weight than the opinions of other physicians because treating physicians "are employed to cure and thus have a greater opportunity to know and observe the patient as an individual . . .."  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).  Likewise, generally, the opinions of examining physicians are afforded greater weight than the opinions of non-examining physicians.  *Lester*, 81 F.3d at 830-31 (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)).

The ALJ may disregard a physician's opinion whether or not that opinion is contradicted. *See Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the ALJ rejects a treating or examining physician's opinion which is uncontradicted by another doctor, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion. If the ALJ rejects a treating or examining physician's opinion which is contradicted by another doctor, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting the contradicted opinion. *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043). More weight is given to an opinion that is more consistent with the record as a whole. *See* 20 C.F.R. § 404.1527(d)(4); *see also Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987).

Plaintiff alleges that the ALJ improperly rejected Dr. Dapra's medical opinion because the ALJ did not adopt Dr. Dapra's conclusion that plaintiff can only sit for four hours in an eight-hour day, stand for two hours in an eight-hour day, and walk for one hour in an eight-hour day (#13, pp. 7-8). Plaintiff argues that if the ALJ had given Dr. Dapra's opinion "proper weight," then the ALJ would have found that plaintiff cannot sustain full-time work and is "disabled" under the Social Security Act. *Id.* at 8.

In June 2009, plaintiff saw Dr. Gerson, a state agency examining physician, for a consultative evaluation. Dr. Gerson found that plaintiff's range of motion in his cervical spine was normal, but that plaintiff's range of motion in his lumbar area, left hip and shoulder was mildly limited (AR 15, 190). Dr. Gerson also found that plaintiff's strength and sensation were somewhat diminished in his lower left leg, but were intact in all other extremities. *Id.* Dr. Gerson noted that plaintiff was able to point out his various ailments by rotating both arms and hands in several directions with no obvious pain, and was able to cross his left leg over his right leg with no pain or awkwardness. *Id.* at 192. After the examination was finished, Dr. Gerson observed that plaintiff walked with a quicker

pace than during the exam. *Id.* at 15, 192.  Based on his observations, Dr. Gerson concluded that plaintiff could lift up to fifty pounds, and could sit for at least six hours and stand/walk for up to six hours in an eight-hour day. *Id.* at 18, 191.  Dr. Gerson also concluded that plaintiff could occasionally climb stairs, ramps, ladders and scaffolds, and that he could occasionally stoop/bend, crouch/squat and crawl. *Id.* at 191.

Later that month, Dr. Peterman, a state agency reviewing physician, reviewed plaintiff's medical file and formulated his own RFC assessment (AR 15, 171-78).  Dr. Peterman opined that plaintiff deserved a more restrictive RFC than Dr. Gerson had assessed, due to plaintiff's left leg weakness and atrophy. *Id.* at 177.  Dr. Peterman concluded that plaintiff could lift up to twenty pounds, and could sit for at least six hours and stand/walk for at least two hours in an eight-hour day. *Id.* at 172.  Dr. Peterman also concluded that plaintiff could not climb ladders, ropes or scaffolds, and could not kneel, crouch or crawl due to left leg weakness. *Id.* at 173.

In April 2011, plaintiff saw Dr. Dapra, a state agency examining physician, for a second consultative evaluation.  Dr. Dapra found that plaintiff's range of motion in his neck, lower spine, left ankle and left foot was limited (AR 16, 131).  Dr. Dapra also found that plaintiff had some atrophy and mild weakness in his left leg. *Id.*  Dr. Dapra concluded that plaintiff could lift up to twenty pounds, and could sit for four hours, stand for two hours and walk for one hour in an eight-hour day. *Id.* at 16, 133, 143.  Dr. Dapra also concluded that plaintiff could not climb stairs, ramps, ladders or scaffolds, and could not stoop, kneel or crawl. *Id.* at 135.

As an examining doctor whose opinion is partially contradicted, the ALJ may reject Dr. Dapra's opinion for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31.  Here, the ALJ set forth specific and legitimate reasons for finding that Dr. Dapra's conclusion that plaintiff could only sit for four hours and could only

stand/walk for three hours in an eight-hour day was inconsistent with other evidence in plaintiff's medical records—which did not indicate such severe limitations.

First, the court notes that the Social Security regulations do not state that if an ALJ affords substantial weight to an examining doctor's opinion, the ALJ must adopt that doctor's findings in their entirety.  Here, the ALJ stated that he gave significant consideration to both Dr. Gerson's 2009 consultation and Dr. Dapra's 2011 consultation, especially given plaintiff's failure to seek ongoing medical or non-medical treatment (AR 18).  The ALJ noted that both of these examiners diagnosed similar impairments, such as reduced range of motion in plaintiff's spine and motor strength weakness and diminished sensation in plaintiff's left leg.  *Id.*   The ALJ also noted that although both Dr. Gerson and Dr. Dapra agreed that plaintiff could lift up to twenty pounds, the doctors offered different opinions as to plaintiff's ability to sit, stand and walk.  *Id.*   Based on the ALJ's review of these two consultative opinions, plaintiff's limited medical records, and plaintiff's failure to seek ongoing treatment, the ALJ concluded that Dr. Gerson's June 2009 assessment overestimated plaintiff's limitations and that Dr. Dapra's April 2011 assessment underestimated plaintiff's limitations.  *Id.*

The court finds that even though the ALJ did not fully credit either Dr. Gerson or Dr. Dapra's medical opinion, he reasonably resolved the conflicts in the opinion evidence based on plaintiff's limited medical record.  The ALJ explained that limiting plaintiff to lifting twenty pounds occasionally and ten pounds frequently was supported by both the examining physicians' and reviewing physician's assessments.  *Id.* at 19.  The ALJ also explained that although Dr. Gerson and Dr. Dapra offered different opinions as to the length of time plaintiff could sit, stand and walk, the record did not contain any objective finding that plaintiff could not sit for at least six hours in an

eight-hour day.³  *Id.* at 18.   Thus, the ALJ reasonably concluded that the overall record indicated that plaintiff could sit for at least six hours in an eight-hour day.  The ALJ further explained that Dr. Boscovich's July 2010 medical findings did not indicate that plaintiff had any serious motor strength abnormality in his lower extremities or serious neurological findings.  *Id.*  Thus, the ALJ reasonably concluded that plaintiff could stand and/or walk for at least four hours in an eight-hour day, but should avoid stairs, ladders and scaffolds.  *Id.*  This assessment constituted an appropriate compromise between Dr. Gerson's opinion that plaintiff could stand/walk for at least six hours a day and Dr. Dapra's opinion that plaintiff could only stand/walk for three hours a day.

Second, plaintiff's argument that the ALJ should have given greater weight to Dr. Dapra's opinion because Dr. Peterman accepted it does not make sense (#13, p. 10; #18, p. 3 ("However, the reviewing doctor's opinion is completely consistent with the opinion of Dr. Dapra, upon which it was based.")).  Dr. Peterman performed his RFC assessment in June 2009.  Dr. Dapra performed his consultative examination in April 2011.  Thus, it is impossible for Dr. Peterman to have based his RFC assessment on Dr. Dapra's findings, as Dr. Dapra had not yet examined plaintiff at the time Dr. Peterman formulated his RFC.  Further, contrary to plaintiff's assertions, Dr. Peterman's RFC assessment is not "completely consistent" with Dr. Dapra's evaluation.  *Id.*  Dr. Peterman opined that plaintiff can sit for at least six hours and can stand and/or walk for at least two hours in an eight-hour day.  Dr. Dapra concluded that plaintiff can sit for four hours, stand for two hours, and walk for only one hour in an eight-hour day.  Therefore, Dr. Peterman's assessment is not "completely consistent" with Dr. Dapra's evaluation, as plaintiff alleges.

---

³ The court notes that Dr. Peterman, the state agency reviewing physician, also found that plaintiff could sit at least six hours in an eight-hour day.  Although the ALJ rejected Dr. Peterman's opinion as to plaintiff's ability to stand and/or walk, the ALJ did not reject Dr. Peterman's opinion as to plaintiff's ability to sit.  *See id.* at 15.

Finally, it is plaintiff—not the ALJ—who bears the burden of proving disability and who has the responsibility to furnish medical records and any other evidence the ALJ may need in making conclusions about plaintiff's medical impairments. *See* C.F.R. §§ 404.1512(a), 416.912(a). Here, plaintiff alleged onset of his disability in December 2006. However, plaintiff submitted no medical records at all from 2007, 2008 or 2009, as he apparently did not seek treatment during this time period. Plaintiff submitted one medical record from July 2010, in which plaintiff saw Dr. Boscovich in the emergency room, complaining of recent neck pain (AR 17, 140-42). Plaintiff also submitted one medical record from February 2011, in which plaintiff visited Sierra Family Health Center, complaining of lower back pain. *Id*. at 16-17, 138. However, those treatment notes do not indicate if plaintiff was examined by a medical doctor, and it appears that he merely received painkillers. *Id*. at 138. The court finds that the ALJ's consideration and balancing of Dr. Gerson and Dr. Dapra's opinions and assessments was entirely proper, especially in light of plaintiff's limited relevant medical evidence of record.

The court finds that in assessing plaintiff's RFC, the ALJ properly resolved conflicts in the examining physicians' and reviewing physician's opinions in light of the overall medical record and the lack of significant ongoing treatment. In limiting plaintiff to sitting for six hours and standing and/or walking for four hours in an eight-hour day, the ALJ's determination appears reasonable and is consistent with the overall record. Finally, the court finds that the ALJ gave sufficiently "specific and legitimate reasons" for weighing Dr. Gerson and Dr. Dapra's findings as he did, given the state of plaintiff's medical record. *Lester*, 81 F.3d at 830-31.

Since there is substantial evidence in the record to support the ALJ's determination, this court will not disturb the ALJ's decision. *See Andrews*, 53 F.3d at 1039-40 ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.

We must uphold the decision where the evidence is susceptible to more than one rational interpretation"). Accordingly, the court finds that the ALJ did not commit reversible error in partially discounting Dr. Dapra's opinion.

### D. Plaintiff's RFC Finding

A claimant's RFC is "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). RFC is comprised of a claimant's physical abilities, mental abilities and other impairments. *Id.* RFC is divided into five exertional categories: (1) sedentary, (2) light, (3) medium, (4) heavy, and (5) very heavy. 20 C.F.R. § 404.1567. In the Ninth Circuit, in determining a claimant's RFC, the ALJ "must consider all relevant evidence in the record, including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citation omitted).

Here, the ALJ noted that although plaintiff alleged onset of his disability in December 2006, he did not report neck, back or leg pain that month, but only saw a doctor for a work-related puncture wound to his left hand (AR 17, 144-45). Plaintiff received no subsequent treatment that month, and no treatment at all in 2007, 2008 and 2009. *Id.* at 17. In July 2010, plaintiff saw Dr. Boscovich, an emergency room physician, complaining of recent neck pain. *Id.* at 17, 140-42. At that time, plaintiff received spinal x-rays, which displayed "major DJD of the lower levels of the cervical spine with disc space narrowing." *Id.* at 141. However, plaintiff's symptoms were significantly controlled with medication and he was able to move and ambulate without difficulty. *Id.* at 15, 141. In February 2011, plaintiff saw a doctor complaining of back pain. *Id.* at 16-17, 138. However, the treatment notes do not indicate if any examination was conducted, and it appears that plaintiff merely received painkillers. *Id.* at 138.

The ALJ noted that although plaintiff's spinal x-rays revealed degenerative changes, the record did not contain any diagnostic testing such as tomography, magnetic resonance imaging, or nerve conduction studies that show any serious abnormality or surgical lesion.  *Id.* at 17.

The ALJ also noted that even though plaintiff alleged disabling joint pain with an onset date of December 2006, he only sought subsequent medical treatment twice.  *Id.*  The ALJ properly concluded that plaintiff's failure to seek treatment was inconsistent with his allegations of disabling musculoskeletal symptoms and a limited ability to sit, stand and walk.[4]  *Id.*; *see Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ may rely upon a claimant's unexplained or inadequately explained failure to seek treatment when making an adverse credibility determination); SSR 96-7p (ALJ may discredit claimant where "the level or frequency of treatment is inconsistent with the level of complaints").  Although plaintiff testified that he began regular treatment at Sierra Family Health Center in 2011, plaintiff did not submit any additional medical evidence subsequent to the hearing to support this claim (AR 18, 216-17).

Finally, the ALJ noted that plaintiff only took aspirin for his alleged disabling back pain until February 2011, when he was prescribed gabapentin and hydrocodone.  *Id.* at 17, 138.  Plaintiff also had not participated in any alternative programs to receive his symptoms, such as physical therapy, acupuncture, massage therapy, chiropractic care or pain management.  *Id.* at 17.

As stated previously, the ALJ relied upon Dr. Gerson's June 2009 consultation and Dr. Dapra's April 2011 consultation and recognized that both of these physicians diagnosed plaintiff with similar impairments—reduced range of motion in plaintiff's spine and motor strength weakness

---

[4] The ALJ noted that although plaintiff alleged he could not afford medical treatment until 2011, there are numerous private and public agencies that provide a basic level of health care.  Plaintiff did not report that he attempted to seek treatment or was rejected from any of these organizations.  *Id.* at 18.  Thus, the ALJ concluded that if plaintiff's allegations of disabling pain were fully credible, he would have attempted to obtain treatment or medication through a local county assistance program or Medicaid.  *Id.*

and diminished sensation in plaintiff's left leg. *Id.* at 18. The ALJ specifically noted Dr. Gerson's observation that despite plaintiff's subjective allegations, he was able to perform maneuvers without difficulty and he walked with a quickened pace after the exam had concluded. *Id.* at 15, 192.

Under the circumstances of this case, the court finds that the ALJ did not commit reversible error in formulating plaintiff's RFC analysis. The record indicates that the ALJ was aware of plaintiff's x-ray findings and his related complaints of neck and back pain. *Id.* at 15-19. As the ALJ properly explained, despite the fact that plaintiff's x-rays showed degenerative changes, plaintiff's recent neck pain appeared to be controlled by medication and plaintiff was able to move and ambulate without difficulty. *Id.* at 15, 141, 192. Accordingly, the court concludes that the ALJ did not commit reversible error in formulating plaintiff's RFC analysis.

### E. Testimony from a Vocational Expert

In Step 5 of the sequential evaluation process, the burden of proof shifts to the agency to demonstrate that "the claimant can perform a significant number of other jobs in the national economy." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). This determination is based on four factors—the claimant's RFC, age, work experience and education. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). To assist in the Step 5 determination, the Social Security Administration established the Medical–Vocational Guidelines, or "Grids", which "consist of a matrix of [the four factors] and set forth rules that identify whether jobs requiring a specific combination of these factors exist in significant numbers in the national economy." *Id.* (citing *Heckler v. Campbell*, 461 U.S. 458, 461–62 (1983)). However, unless a claimant has first established a prima facie case of disability in steps one through four of the sequential evaluation process, it is unnecessary for the ALJ to proceed to Step 5. *See Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996); 20 C.F.R. Pt. 404, Subpt. P, App. 2.

Plaintiff generally alleges that because he suffers from non-exertional impairments, the ALJ should have called a vocational expert to satisfy the ALJ's burden at Step 5 (#13, p. 4). However, as noted above, the ALJ assessed plaintiff's limitations based upon the record as a whole and properly determined that plaintiff has the RFC to perform light work. *See* 20 C.F.R. § 404.1567(b). Thus, the ALJ was not required to proceed to Step 5 of the sequential evaluation process. *See* 20 C.F.R. § 1520(a)(4) (if at any point in the five-step inquiry, the ALJ determines that a claimant is or is not disabled, further review is unnecessary). Accordingly, the court finds that the ALJ did not commit reversible error by failing to call a vocational expert to testify at plaintiff's hearing.

## V. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's decision was supported by substantial evidence in the record. The court recommends that plaintiff's motion to remand (#13) be denied, and defendant's cross-motion for summary judgment (#15) be granted. The parties are advised:

1.  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.  This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion to remand (#13) be **DENIED** and defendant's cross-motion for summary judgment (#15) be **GRANTED**.

**DATED:**  July 3, 2013.

_____
**UNITED STATES MAGISTRATE JUDGE**